UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| RAUL GONZALES,<br><br>　　　　Plaintiff,<br><br>v.<br><br>FORD MOTOR CO., et al.<br><br>　　　　Defendants. | Case No. 2:25-cv-00523-WLH-JPR<br><br>**ORDER RE PLAINTIFF'S MOTION TO REMAND [14]** |

Before the Court is Plaintiff's Motion to Remand (the "Motion"). (Mot. to Remand ("Mot."), Docket No. 14). No party filed a written request for oral argument stating that an attorney with five years or less of experience would be arguing the matter. (See Standing Order, Docket No. 7 at 16). Further, pursuant to Federal Rule of Civil Procedure 78 and Local Rule 7-15, the Court finds this matter appropriate for decision without oral argument. The hearing calendared for May 2, 2025, is **VACATED**, and the matter taken off calendar. For the reasons explained herein, the Court **DENIES** the Motion.

///

///

///

I.  **BACKGROUND**

  A.  **Factual Background**

Plaintiff Raul Gonzales ("Plaintiff" or "Plaintiff Gonzales") brings the present action against Defendant Ford Motor Co. ("Defendant" or "Defendant Ford")[1] alleging (1) breach of implied warranty of merchantability under the Song-Beverly Act; (2) breach of express warranty under the Song-Beverly Act; (3) fraudulent concealment; and (4) violation of the Consumers Legal Remedies Act, Cal. Civil Code § 1750 *et seq*. (*see generally* Compl., Docket No. 1-3).

Plaintiff purchased the vehicle at issue (the "Vehicle) on or about May 23, 2022. (*Id.* ¶ 5). The Vehicle was purchased via an installment sales contract (the "Purchase Agreement") for a total price of $97,889.64. (*Id.*). The Vehicle was purchased from "Defendant['s] authorized dealership [(the "Dealership")] Galpin Motors Inc in North Hills, California[.]" (*Id.* ¶ 31).

Plaintiff presented the Vehicle to Defendant for a variety of repairs, including a defective transmission (the "Defective Transmission"), beginning on May 2, 2023. (*Id.* ¶¶ 34-35). The Vehicle was serviced at an authorized service technician to address the Defective Transmission. (*Id.* ¶ 35). On May 13, 2023, Plaintiff again brought the vehicle in for servicing at "a repair facility authorized by Defendant[]" to address the Defective Transmission. (*Id.* ¶ 36). On July 23, 2024, Plaintiff "delivered the Vehicle to a repair facility authorized by Defendant[] . . . [which] has been in Defendant's custody for over thirty-six (36) days where it remain[ed] unrepaired." (*Id.* ¶ 38).

  B.  **Procedural Background**

Plaintiff initially filed this action in the Los Angeles Superior Court ("LASC") on November 14, 2024. (Notice of Removal, Docket No. 1 ¶ 1). Defendant was served on December 20, 2024, and timely removed the action to this Court pursuant to

---

[1] Though Plaintiff also brings the action against unnamed Does 1 – 20, the Court only considers Defendant Ford for the purposes of the Motion.

2

28 U.S.C. § 1446(b). (Notice of Removal ¶ 3). On March 18, 2025, Plaintiff filed the Motion to Remand presently before the Court. (*See* Mot.).

## II. DISCUSSION

Before the Court is Plaintiff's Motion to Remand. (Mot., Docket No. 14). Plaintiff failed to file a Reply Brief to Defendant's Opposition. For the reasons explained herein, the Court **DENIES** the Motion.

### A. Legal Standard

A federal court has diversity jurisdiction under 28 U.S.C. § 1332 if the parties to the action are citizens of different states and the amount in controversy exceeds $75,000. 28 U.S.C. § 1332(a). The defendant removing the case to federal court bears the burden of establishing the jurisdictional facts. *Abrego Abrego v. The Dow Chem. Co.*, 443 F.3d 676, 682–83 (9th Cir. 2006). Courts must "strictly construe the removal statute against removal jurisdiction," and any doubt about the right of removal is resolved in favor of remand. *See Gaus v. Miles, Inc.*, 980 F.2d 564, 566–67 (9th Cir. 1992) (quoting *McNutt v. Gen. Motors Acceptance Corp.*, 298 U.S. 178, 189 (1936)).

The Supreme Court has held that "diversity jurisdiction does not exist unless *each* defendant is a citizen of a different State from *each* plaintiff." *Owen Equip. & Erection Co. v. Kroger*, 437 U.S. 365, 373 (1978) (emphasis in original). "Individuals are citizens of their state of domicile." *Munoz v. Small Bus. Admin.*, 644 F.2d 1361, 1365 (9th Cir. 1981); *Kanter v. Warner-Lambert Co.*, 265 F.3d 853, 857 (9th Cir. 2001) ("A person's domicile is her permanent home, where she resides with the intention to remain or to which she intends to return"). A corporation is a citizen of the state in which it was incorporated and the state where it has its principal place of business. *See* 28 U.S.C. § 1332(c).

"[T]he amount in controversy is determined by the complaint operative at the time of removal and encompasses all relief a court may grant on that complaint if the plaintiff is victorious." *Chavez v. JPMorgan Chase & Co.*, 888 F.3d 413, 414–15 (9th Cir. 2018). This includes punitive damages and attorneys' fees. *See Gibson v.*

3

*Chrysler Corp.*, 261 F.3d 927, 945 (9th Cir. 2001).  If the complaint affirmatively demands an amount in controversy greater than $75,000, the jurisdictional threshold is "presumptively satisfied[,]" and "the sum claimed by the plaintiff controls if the claim is apparently made in good faith" unless "from the *face of the pleadings*, it is apparent, to a legal certainty, that the plaintiff cannot recover the amount claimed . . . ." *Guglielmino v. McKee Foods Corp.*, 506 F.3d 696, 699 (9th Cir. 2007); *St. Paul Mercury Indem. Co. v. Red Cab Co.*, 303 U.S. 283, 288–89 (1938) (emphasis added).  In the circumstances where it is "unclear or ambiguous from the face of a state-court complaint whether the requisite amount in controversy is pled, the removing defendant bears the burden of establishing, by a preponderance of the evidence, that the amount in controversy exceeds the jurisdictional threshold." *Fritsch v. Swift Transportation Co. of Arizona*, LLC, 899 F.3d 785, 793 (9th Cir. 2018) (citation omitted).

      **B.**    <u>Analysis</u>

Plaintiff moves the Court to remand this action because Defendant "failed to meet its burden to demonstrate diversity jurisdiction[.]"  (Mot. at 11).  Plaintiff raises three arguments.  First, Plaintiff argues that Defendant has not sufficiently alleged Plaintiff's domicile in California.  (*Id.* at 4-5).  Second, Plaintiff argues that the amount in controversy is not met because the potential recovery amounts are too speculative.  (*Id.* at 5-7).  Third, Plaintiff argues that "comity principles weigh heavily in favor of remand" and that the court should "veto removal jurisdiction and remand this matter back to state court, where it began."  (*Id.* at 8-10).  The Court is unpersuaded by these three arguments and accordingly **DENIES** the Motion to Remand for the reasons explained below.

      *1. Complete Diversity of Citizenship is Satisfied*

Plaintiff first argues that Defendant has failed to meet its burden to establish that he is domiciled in California.  (Mot. at 4-5).  Plaintiff contends that Defendant fails to support the assertion that he is a "'citizen'" of California arguing that "neither

1   the [Purchase Agreement] nor the Complaint contain such evidence or allegations."
2   (*Id.* at 5).

3     Defendant counters that "[t]he [Purchase Agreement] . . . notes Plaintiff's
4   address as 10452 Fullbright Ave., Chatsworth, CA 91311[,]" and that "every record
5   provided through Plaintiff's Initial Disclosures indicates a California address for
6   Plaintiff's residence, and a California address for the dealership or repair facility."
7   (Opp'n to Mot. at 2-3). Defendant argues that "a person's state of domicile continues
8   unless rebutted with sufficient evidence of change" and highlights that "Plaintiff has
9   submitted no evidence regarding non-California residency from his date of purchase
10  in 2022 through 2024, and beyond, including any evidence for repairs at non-
11  California repair facilities." (*Id.* at 3). The Court agrees with Defendant.

12    "Courts in this district have held a party may rely on an address listed in a
13  purchase agreement to meet its burden of establishing an individual's citizenship."
14  *Jimenez v. General Motors, LLC*, No. 2:23-cv-06991, 2023 WL 6795274, at *3 (C.D.
15  Cal. Oct. 13, 2023); *see also Aceves v. Subaru of America, Inc.*, No. 2:23-cv-02953,
16  2023 WL 5806144, at *2 (C.D. Cal. Sept. 7, 2023) (same). This is particularly apt
17  where a plaintiff does not deny California citizenship or submit evidence to the
18  contrary. *See, e.g., Ghebrendrias v. FCA U.S. LLC*, No. 2:21-cv-06492, 2021 WL
19  5003352, at *3 (C.D. Cal. Oct. 28, 2021) (finding California citizenship sufficiently
20  established where purchase agreement and repair order listed a California address, and
21  the plaintiffs did not deny they were California citizens); *El-Said v. BMW of N. Am.,*
22  *LLC,* 8:19-cv-02426, 2020 WL 1187171, at *3 (C.D. Cal. Mar. 11, 2020) (same).

23    Here, Defendant submitted sufficient evidence demonstrating by preponderance
24  of the evidence that Plaintiff is a citizen of California for purposes of diversity
25  jurisdiction. First, Defendant submitted the Purchase Agreement, which lists
26  Plaintiff's address in Chatsworth, CA at the time of purchase in May 2022. (Decl. of
27  Jonathan Won ISO Opp'n to Mot. ("Won Decl."), Docket No. 15-1 ¶ 4 & Ex. 1 at
28

12).² The Purchase Agreement also reflects the Vehicle was purchased from the Dealership located in North Hills, CA. (*Id.*).

Further, Defendant included two repair records at Big Brand Tire & Service from July 2-3, 2024, and July 13-22, 2024. (*Id.* ¶ 4 & Ex. 1 at 33-36). These repair records reflect both that the repairs themselves took place in California and that Plaintiff's address continued to be in California – though now in Porter Ranch, CA. (*Id.*). In sum, the evidence submitted by Defendant – including the Purchase Agreement and repair records – reflects that Plaintiff is a citizen of California by a preponderance of the evidence. *Jimenez*, 2023 WL 6795274, at *3; *Aceves*, 2023 WL 5806144, at *2. Where Plaintiff does not deny being a California citizen, or submit any evidence to the contrary, the Court is satisfied that complete diversity of citizenship exists. *Ghebrendrias*, 2021 WL 5003352, at *3; *El-Said*, 2020 WL 1187171, at *3; *see also Luna v. FCA U.S., LLC*, No. 21-cv-01230, 2021 WL 4893567, at *7 (N.D. Cal. Oct. 20, 2021) ("By failing to address any of the arguments raised by [Defendant] in its opposition to Plaintiff's motion for remand, Plaintiff effectively concedes these points").

### 2. The Amount in Controversy Is Satisfied

Plaintiff next argues that Defendant has not met its burden to demonstrate that the amount in controversy is satisfied. (Mot. at 5-7). Plaintiff contends that the actual damages are "too speculative . . ." (*Id.* at 6). Plaintiff also argues that civil penalties and attorney's fees are too speculative to be considered in the calculation of the amount in controversy. (Mot. at 5). Plaintiff concludes, therefore, that Defendant "cannot convince the court [*sic*] by a preponderance of the evidence that the amount in controversy exceeds $75,000." (*Id.* at 7).

---

² The Court notes that Exhibit 1 – which encompasses multiple documents – is not paginated in a way that facilitates easy referencing of page numbers. The Court refers, therefore, to the page number of the PDF.

1  Defendant argues that "the total amount in controversy exceeds $75,000
2  regardless of whether utilizing the total purchase price, or only payments made to
3  date, and even before adding Plaintiff's claims for statutory attorneys' fees or
4  prejudgment interest." (Opp'n to Mot. at 8). The Court agrees with Defendant.
5  "Where, as here, it is unclear or ambiguous from the face of the state-court
6  complaint whether the requisite amount in controversy is pled, the removing
7  defendant bears the burden of establishing, by a preponderance of the evidence, that
8  the amount in controversy exceeds the jurisdictional threshold." *Fritsch v. Swift
9  Transportation Co. of Arizona, LLC*, 899 F.3d 785, 793 (9th Cir. 2018) (citation and
10 quotations omitted). "To meet this standard, the defendant must point to 'allegations
11 in the complaint and in the notice of removal' and provide 'summary-judgment-type
12 evidence relevant to the amount in controversy.'" *Karapetyan v. Volkswagen Grp. of
13 Am.*, No. 2:24-cv-04271, 2024 WL 3888904, at *2 (C.D. Cal. Aug. 21, 2024) (quoting
14 *Chavez v. JPMorgan Chase & Co.*, 888 F.3d 413, 416 (9th Cir. 2018)). "'The amount
15 in controversy may include damages (compensatory, punitive or otherwise) and the
16 cost of complying with an injunction, as well as attorneys' fees awarded under fee
17 shifting statutes.'" *Id.* (quoting *Chavez*, 888 F.3d at 416) (quotations omitted).
18 "'[T]he defendant's showing on the amount in controversy may rely on reasonable
19 assumptions.'" *Canesco v. Ford Motor Co.*, 570 F.Supp.3d 872, 888 (S.D. Cal.
20 2021).
21 Here, Plaintiff seeks "replacement or restitution," as well as incidental and
22 consequential damages according to proof, civil penalties "not to exceed two times the
23 amount of Plaintiff's actual damages," punitive damages, injunctive relief, attorneys'
24 fees, costs of suit and prejudgment interest. (*see* Compl. at Prayer for Relief). The
25 Court begins by assessing the amount of restitution.
26 As a preliminary matter, the parties disagree about the proper calculation of
27 restitution. Plaintiff suggests that his recovery is "limited to the actual payment
28 amount to the seller." (Mot. at 6). Defendant contends that the total sale price

7

controls, though argues in the alternative that Plaintiff's actual payments are sufficient to meet the amount in controversy threshold either way.³ (Opp'n to Mot. at 8).

Under the Song-Beverly Act, "'the actual price paid or payable by the buyer [only] includes any *paid* finance charges.'" *Luna*, 2021 WL 4893567, at *7 (emphasis in original) (quoting *Alvarado v. FCA U.S., LLC*, No. EDCV 17-505 JGB, 2017 WL 2495495, at *4 (C.D. Cal. Jun. 8, 2017). While "[c]ourts routinely find that an undisputed Retail Installment Sales Contract can establish actual damages[,]" this should account for actual payments made. *Id.* at *7. Where the Court is unable to determine the specific amount paid towards an installment contract, however, district courts find the "total cash price" within such contract appropriate as a substitute. *Id.*; *see also Messih v. Mercedes-Benz USA, LLC*, 2021 WL 2588977, at *4 (N.D. Cal. Jun. 24, 2021).

Here, the total sales price within the Purchase Agreement for the Vehicle is $97,889.64. (Won Decl. at 12). Plaintiff does not present evidence to demonstrate the amount paid towards the contract, arguing only in his Motion that the total sales price should not control. (Mot. at 6-7). Accordingly, the Court finds that the total cash price is the most appropriate figure in calculating restitution owed, which is $82,956.91. (Won Decl. at 12); *see, e.g., Luna*, 2021 WL 4893567, at *8 (relying on the total cash price where the plaintiff failed to submit a reply demonstrating the amount paid under the purchase agreement).

This restitution amount must be "'offset'" based on Plaintiff's use of the vehicle – calculated as "purchase price multiplied by a fraction constituting miles driven divided by 120,000" – which is then subtracted from the purchase price to get the amount of restitution. *Lee v. FCA U.S., LLC*, No. CV 16-5190, 2016 WL 11516754,

---

³ Defendant presents a hypothetical amount that Plaintiff has paid towards the Vehicle, were he to have made all payments up through April 1, 2025. Defendant calculated this figure to be $47,559.90. (Opp'n to Mot. at 8). While the Court appreciates this approach, it is too speculative, as there is no evidence Plaintiff has made payments up through this date.

8

at *2 (C.D. Cal. Nov. 7, 2016). Defendant provided the mileage offset in its opposition to the Motion.[4] As Plaintiff did not file a Reply, "he does not rebut [Defendant's] vehicle repair evidence or mileage offset calculations." *Luna*, 2021 WL 4893567, at *8.

The first warranty repair for the problem rendering the Vehicle an alleged lemon was at 1,515 miles. (Won Decl. ¶¶ 5-7 & Ex. 3). This results in an offset amount of $1,047.33 – a figure arrived at by dividing 1,515 miles by 120,000 miles and multiplying that figure by $82,956.91. Subtracting the offset amount from the total cash price results in a restitution amount of $81,909.58. *See Luna*, 2021 WL 4893567, at *8 (calculating the restitution amount by subtracting the offset amount from the total cash price). This, alone, surpasses the amount in controversy threshold. Lest there be any doubt as to this figure, however, the Court assesses the civil penalties at issue.

With respect to civil penalties, "'[c]ourts treat the Song-Beverly Act's civil penalties akin to punitive damages.'" *Canesco*, 570 F.Supp.3d at 901 (quoting *Carillo v. FCA U.S.A., LLC*, 546 F.Supp.3d 995, 1003 (C.D. Cal. 2021). "'It is well established that punitive damages are part of the amount in controversy in a civil action.'" *Id.* (quoting *Gibson v. Chrysler Corp.*, 261 F.3d 927, 945 (9th Cir. 2001). Here, where Plaintiff has explicitly sought civil penalties at an amount up to twice Plaintiff's actual damages, the Court finds good reason to include them.[5] *Id.* at 902; *see also Brady,* 243 F.Supp.2d at 1010 (including the two-time civil penalty provided by the Song-Beverly Act in the amount in controversy calculation where explicitly

---

[4] The Court notes, however, that these calculations rely on the total sales price of $97,889.64, rather than the total cash price of $82,956.91. To that end, the Court alters Defendant's calculations only to account for this difference in base figure.

[5] The Court also notes that Plaintiff has sought injunctive relief, as well as punitive damages pursuant to both his Consumers Legal Remedies Act claim and his fraudulent concealment claim. This, ostensibly, would result in an even greater calculation of total damages, further demonstrating that the amount in controversy threshold is easily met here.

9

sought by plaintiff); *Carillo*, 546 F.Supp.3d at 1003-04; *Luna*, 2021 WL 4893567, at *9; *Messih*, 2021 WL 2488977, at *6. Were Plaintiff to receive a civil penalties award twice the amount of his actual damages, this would amount to $163,819.16, in addition to his actual damages of $81,909.58. At $245,728.74, this unquestionably meets the amount in controversy threshold.

Accordingly, the Court finds it unnecessary to consider the parties' arguments as to whether the Court should also consider attorneys' fees in its calculation of the amount in controversy. *See, e.g., Canesco*, 570 F.Supp.3d at 903 (declining to consider attorneys' fees as the amount in controversy threshold was met even absent their inclusion); *Ha Nguyen v. BMW of North Am., LLC*, No. 3:20-cv-02432, 2021 WL 2411417, at *5 (S.D. Cal. June 14, 2021) (same). Where the amount in controversy is easily met, the Court is satisfied that Defendant has met its burden by a preponderance of the evidence.

To the extent Plaintiff has now determined that he wishes to alter his prayer for relief such that the amount-in-controversy threshold for this Court's jurisdiction is not met, he may seek to dismiss and re-file a more limited complaint in state court, should that course of action remain available to him. In any event, the Court **ORDERS** the parties to meet and confer about stipulating to a cap on Plaintiff's recovery and to remanding this action. Within 30 days from the date of this Order, the parties must file a Stipulation and Proposed Order to that effect or a Joint Report explaining the status of a trial in this matter.

### 3. Diversity Jurisdiction Is Not Discretionary

Plaintiff argues that the Court should "veto removal jurisdiction[,]" given that all of the claims are rooted in state law.[6] (Mot. at 8). Defendant contends that the

---

[6] The Court also notes that Plaintiff cites to no case law to support this proposition. While he included a short form citation "*Garble, supra*, at 313[,]" there is no such case referenced earlier in the brief. The Court located a case entitled *Grable & Sons Metal Products, Inc. v. Darue Engineering & Mfg.*, 545 U.S. 308, 313 (2005). *Grable*, however, stands for the proposition that when a federal question is embedded

1  Court "does not have authority to decline to exercise its diversity jurisdiction."
2  (Opp'n to Mot. at 8-9). The Court agrees with Defendant.
3      When a court has diversity jurisdiction over a case, exercise of that jurisdiction
4  "is not discretionary." *Carnegie-Mellon University v. Cohill*, 484 U.S. 343, 356
5  (1988); *see also Sorosky v. Burroughs Corp.*, 826 F.2nd 794, 805 (9th Cir. 1987)
6  (". . . [A] district court does not have discretion to refuse jurisdiction over state claims
7  in a diversity case"). Rather, federal courts "have a 'virtually unflagging
8  obligation . . . to exercise the jurisdiction given them.'" *Petropolous v. FCA U.S.,*
9  *LLC*, No. 17-cv-0398, 2017 WL 2889303, at *6 (S.D. Cal. July 7, 2017) (quoting
10 *Colorado River Water Conservation Dist. v. United States*, 424 U.S. 800, 817 (1976)).
11 Other courts have considered Plaintiff's comity argument and rejected it. *See, e.g.,*
12 *Gonzlez v. FCA U.S. LLC*, No. EDCV 19-967, 2020 WL 1444941, at *3 (C.D. Cal.
13 Mar. 24, 2020) (rejecting comity argument in context of Song-Beverly diversity
14 jurisdiction case). Where, as here, the Court has determined diversity jurisdiction to
15 be satisfied, it must retain the action. *See Petropolous,* 2017 WL 2889303, at *6-7
16 (denying motion to remand where diversity jurisdiction satisfied). Accordingly, the
17 Court rejects Plaintiff's argument that comity principles or public policy concerns
18 require remand of the action.

19 **III.  CONCLUSION**
20     For the foregoing reasons, the Motion is **DENIED**. The Court **ORDERS** the
21 parties to meet and confer regarding the potential filing of a Stipulation and Proposed
22 Order capping Plaintiff's damages below the jurisdictional threshold within 30 days
23 from the date of this Order. In the event the parties fail to agree about such a

---

within a state-law claim, the exercise of federal jurisdiction pursuant to 28 U.S.C. § 1331 may be subject to "possible veto . . ." *Id.* at 313. Here, the basis for the Court's jurisdiction is not federal question, but diversity of citizenship. Plaintiff has presented no authority that this limited rule has been extended to impact the exercise of diversity jurisdiction pursuant to 28 U.S.C. § 1332, nor is the Court aware of any.

stipulation, the Court **ORDERS** the parties to file a Joint Report explaining the status of a trial in this matter.

**IT IS SO ORDERED.**

Dated: April 21, 2025

_____
HON. WESLEY L. HSU
UNITED STATES DISTRICT JUDGE